## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                        )
**VIACOM, INC.,**                       )
                                        )
              **Plaintiff,**            )
                                        )
        **v.**                          )        **Civil Action No.  05-0468 (ESH)**
                                        )
**UNITED STATES OF AMERICA,**           )
                                        )
              **Defendant.**            )
_____ )


### MEMORANDUM OPINION

Plaintiff Viacom, Inc. brings this suit against the United States under § 107(a) of the Comprehensive Environmental Response Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9607(a).  Plaintiff seeks to recover costs incurred in cleaning up environmental contamination and seeks a declaratory judgment of liability for any future cleanup costs under 28 U.S.C. §§ 2201 and 2202 and CERCLA § 113(g)(2), 42 U.S.C. § 9613(g)(2).  Defendant has moved to dismiss the suit, arguing that § 107(a) does not provide for a "potentially responsible party" ("PRP") to recover a portion of its costs from other potentially liable parties.  Because § 107(a) in fact so provides, defendant's motion is denied.


### BACKGROUND

**I.    Factual Background**

This suit concerns cleanup costs plaintiff's corporate predecessor, Westinghouse Electric Corporation, incurred at its former Bloomfield, New Jersey facility.  The 14-acre industrial site was constructed for Westinghouse between 1907 and 1922 and was originally devoted to the

production of electric lamps and lamp components. (Compl. ¶¶ 12-13.) Through its work with metals used in lamp production, Westinghouse developed expertise in producing small amounts (a total of a few pounds) of pure uranium. (*Id.* ¶ 15.) Because of this expertise, during World War II the United States Army called on plaintiff to process uranium in very large quantities at Bloomfield as part of the Manhattan Project, which produced the first atomic bomb. (*Id.* ¶ 19.) Plaintiff contends that this "hasty" emergency wartime processing, which ultimately yielded sixty-nine tons of uranium for military use, caused radiological contamination throughout the property. (*Id.* ¶¶ 19, 21-22, 25-26.) During this period, the United States purportedly exerted substantial control over the Bloomfield facility, including approving requisitions for drains and sewer lines in the uranium production area and monitoring production, materials handling, and waste storage and disposal procedures. (*Id.* ¶ 22.)

Westinghouse first began to evaluate and remove radiological contamination in 1976 as part of a governmental effort to evaluate the radiological status of former Manhattan Project facilities. (*Id.* ¶¶ 27-28.) Upon the plant's closure in 1986, Westinghouse began the decommissioning process, which includes reducing residual radioactivity levels. (*Id.* ¶¶ 30-31.) Under the supervision of the Nuclear Regulatory Commission ("NRC") and the New Jersey Department of Environmental Protection, plaintiff spent $26.76 million to remedy contamination. (*Id.* ¶¶ 36, 38.) Plaintiff estimates that it will incur an additional $1.8 million in future response costs. (*Id.* ¶ 41.) Invoking CERCLA § 107(a)'s liability provisions, Viacom seeks to recover a portion of these costs from the United States because defendant was purportedly an "arranger" and "operator" of the Bloomfield plant. (*Id.* at 10; Pl.'s Opp'n at 1.)

II.     **Statutory Background**

Congress enacted CERCLA (generally known as the Superfund law) in 1980 to address

environmental threats posed by hazardous waste sites.  CERCLA "grants the President broad

power to command government agencies and private parties to clean up hazardous waste sites."

*Key Tronic Corp. v. United States*, 511 U.S. 809, 814 (1994).  The law provides the President,

acting primarily through the United States Environmental Protection Agency ("EPA"), with

several approaches for cleaning up contaminated property.  For instance, under CERCLA § 104,

EPA itself can undertake response actions to address hazardous substances.  *See* 42 U.S.C.

§ 9604.  Alternatively, under § 106, EPA can compel responsible parties themselves to clean up

Superfund sites.  *See* 42 U.S.C. § 9606.

CERCLA § 107(a) comes into play once cleanup costs have been incurred.  It provides

that a party that has incurred such expenses may recover its response costs from PRPs who fall

into one of four categories:  (1) owners and operators of facilities at which hazardous substances

are located; (2) past owners and operators of such facilities at the time hazardous substances were

disposed of; (3) persons who arranged for disposal or treatment of hazardous substances; and

(4) certain transporters of hazardous substances to the site.  42 U.S.C. § 9607(a).  Most such

actions are "brought by innocent parties that have undertaken cleanups (say, the federal, state, or

local government)."  *United Techs. Corp. v. Browning-Ferris Indus.*, Inc., 33 F.3d 96, 100 (1st

Cir. 1994).  However, § 107(a) also authorizes recovery of "any other necessary costs of response

incurred by any other person consistent with the national contingency plan."  42 U.S.C.

§ 9607(a)(4)(B).

In 1986, Congress added § 113(f) to CERCLA, which provides that "[a]ny person may seek contribution from any other person who is liable or potentially liable under [§ 107(a)], during or following any civil action under [§ 106] or under [§ 107(a)]."  42 U.S.C. § 9613(f)(1). It further provides that parties that settle with the United States may likewise seek contribution from non-parties to the settlement.  *Id.* § 9613(f)(3)(B).

In *Cooper Industries, Inc. v. Aviall Services, Inc.*, 125 S. Ct. 577 (2004) ("*Aviall*"), the Supreme Court held that in the absence of a preexisting civil action against a party, a PRP may not bring a contribution claim against that party for cleanup costs under § 113(f)(1).  *Id.* at 583. However, the *Aviall* Court specifically declined to address the issue of whether a PRP could sue for contribution under § 107(a) under similar circumstances.[1]  *Id.* at 586.

## ANALYSIS

### I.     Standard of Review

Defendant has moved to dismiss the complaint for failure to state a claim.  Under Fed. R. Civ. P. 12(b)(6), dismissal is appropriate only where a defendant has "show[n] 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  *In re Swine Flu Immunization Prods. Liab. Litig.*, 880 F.2d 1439, 1442 (D.C. Cir. 1989) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1955)).  The allegations in plaintiff's complaint are presumed true for purposes of a 12(b)(6) motion, and all reasonable factual inferences should be construed in plaintiff's favor.  *Maljack Prods., Inc. v. MPAA*, 52 F.3d 373, 375 (D.C. Cir. 1995); *Phillips v. BOP*, 591 F.2d 966, 968 (D.C. Cir. 1979).

---

[1] Plaintiff does not dispute that it is a PRP pursuant to CERCLA.  (*See* Pl.'s Opp'n at 1.)

## II.    A PRP May Seek Indemnification From Other PRPs Pursuant to § 107(a) Where § 113(f) Recovery is Unavailable

Defendant claims that § 113(f) provides the sole avenue for PRPs to recover response costs, asserting that the issue is settled in this Court and in numerous courts of appeals.  (Def.'s Mot. at 9.)  However, the question whether a PRP may seek to recover its costs via § 107(a) is in fact one of first impression in this Circuit,[2] and is one as to which courts elsewhere have recently reached divergent decisions.  *Compare Vine St. LLC v. Keeling*, 362 F. Supp. 2d 754, 761 (E.D. Tex. 2005) (holding a PRP can bring a claim under § 107(a) when it cannot meet the specific requirements of § 113(f)(1)); *Metro. Water Reclamation Dist. of Greater Chicago v. Lake River Corp.*, 365 F. Supp. 2d 913, 918 (N.D. Ill. 2005) (same); *and Syms v. Olin Corp.*, 408 F.3d 95, 106 n.8 (2d Cir. 2005) (recognizing that forbidding contribution under § 107(a) would leave a PRP without cost recovery and that such a result "would create a perverse incentive for PRPs to wait until they are sued before incurring response costs"), *with Waukesha v. Viacom Int'l, Inc.*, 362 F. Supp. 2d 1025, 1028-29 (E.D. Wis. 2005) (denying plaintiff's motion to amend as futile because a PRP must seek contribution under § 113(f)); *Mercury Mall Assocs., Inc. v. Nick's Mkt., Inc.*, 368 F. Supp. 2d 513, 520 (E.D. Va. 2005) (denying plaintiff's motion to amend, recognizing that existing precedent precluded an implied right of contribution under § 107(a)); *and Elementis Chems., Inc. v. TH Agric. & Nutrition, LLC.*, No. 03-5150, at 9 (E.D.N.Y. Jan. 31, 2005) (finding

---

[2] The only relevant case from this Court that defendants cite reached this question merely in *dictum*, and did so in a summary fashion that neither analyzed the relevant statutory provisions prior to *Aviall* nor cited caselaw to support its statement.  *See Foster v. United States*, 922 F. Supp. 642, 657 n.17 (D.D.C. 1996) (expressly not applying this conclusion, because "allocation of the costs is obviously premature at this juncture").

PRP precluded from bringing § 107(a) cost recovery action, but decided before the Second
Circuit issued *Syms*).

Many of the district court rulings rejecting PRPs' § 107(a) cost recovery actions rest on
pre-*Aviall* circuit court decisions that earlier rejected such suits.  *See, e.g, Atl. Research Corp. v.
United States*, No. 02-1199, slip op. at 6 (W.D. Ark. June 1, 2005) (rejecting implied right of
contribution and abiding by 2003 Eighth Circuit precedent even though recognizing that such a
result was "patently unfair"); *Goodrich Corp. v. Emhart Indus., Inc.*, No. 04-0759, slip op. at 8
(C.D. Cal. May 4, 2005) (adhering to pre-*Aviall* Ninth Circuit precedent which forbids an
implied right to contribution); *Mercury Mall*, 368 F. Supp. 2d at 520 (following 1998 Fourth
Circuit precedent in declining to find an implied right to contribution under § 107, but
characterizing such a result as "quixotic").  Therefore, it is unclear what results these district
courts would have reached if they had been unconstrained by older circuit precedents, which
predated the Supreme Court's December 13, 2004 *Aviall* ruling.

This Court is not so constrained, and finds that in light of *Aviall*, a PRP that cannot sue
for contribution for voluntary cleanup costs under § 113(f) may still seek to recover its costs in a
§ 107(a) proceeding.  *Aviall* expressly held that § 113(f) does *not* serve to preclude other types of
contribution actions; therefore, defendant's argument to the contrary is rejected.  (*See* Def.'s Mot.
at 10.)  The Court in *Aviall* held that:

> The last sentence of § 113(f)(1), the saving clause, does not change our
> conclusion.  That sentence provides:  "Nothing in this subsection shall diminish
> the right of any person to bring an action for contribution in the absence of a civil
> action under section 9606 [§ 106] of this title or section 9607 [§ 107] of this title."
> 42 U.S.C. § 9613(f)(1).  The sole function of the sentence is to clarify that
> § 113(f)(1) does nothing to "diminish" any cause(s) of action for contribution that
> may exist independently of § 113(f)(1).  In other words, the sentence rebuts any

presumption that the express right of contribution provided by the enabling clause
[of § 113(f)] is the exclusive cause of action for contribution available to a PRP.
The sentence, however, does not itself establish a cause of action; nor does it
expand § 113(f)(1) to authorize contribution actions not brought "during or
following" a § 106 or § 107(a) civil action; nor does it specify what causes of
action for contribution, if any, exist outside § 113(f)(1).

125 S. Ct. at 583-84. Although the Court expressly declined to rule on whether § 107(a) permits

an action such as this one, *see* 125 S. Ct. at 585, it clarified, contrary to the holdings of several

circuits, that § 113(f) does not bar other types of response cost recovery actions. *See, e.g.*,

*Bedford Affiliates v. Sills*, 156 F.3d 416, 424 (2d Cir. 1998); *New Castle County v. Halliburton*

*NUS Corp.*, 111 F.3d 1116, 1122 (3d Cir. 1997); *United States v. Colo. & E. R.R.*, 50 F.3d 1530,

1536 (10th Cir. 1995). Indeed, circuit courts have already begun to reconsider the validity of

their past rulings in light of *Aviall*, as evidenced by the doubts the Second Circuit recently

expressed about its precedent when it remanded the question presented here for the district court

to reconsider whether a PRP may now bring a recovery action under § 107(a). *See Syms*, 408

F.3d at 106-07 (questioning "whether the rule announced in *Bedford Affiliates* remains viable

after [*Aviall*]"). And in *Aviall*, the Supreme Court remanded for the Fifth Circuit to consider the

plaintiff's § 107 claim. *See* 125 S. Ct. at 586. Accordingly, in light of the sea change currently

in progress as a result of the Supreme Court's recent decision, this Court declines to follow the

precedents that rejected a PRP's right to bring a § 107(a) action prior to *Aviall*.

Indeed, the text of § 107, combined with an implied cause of action thereunder identified

by the Supreme Court, compel the result that Viacom may seek to recover its Superfund costs

under that section. *See Key Tronic Corp.,* 511 U.S. at 818 ("[Section] 107 unquestionably

provides a cause of action for private parties to seek recovery of cleanup costs."). The statute

explicitly permits recovery of "any other necessary costs of response incurred by *any other*

*person* consistent with the national contingency plan." 42 U.S.C. § 9607(a)(4)(B) (emphasis

added).  Thus, a plain reading of § 107 shows that anyone -- whether a PRP or not -- may sue

thereunder to recover its response costs.  *See also Aviall*, 125 S. Ct. at 586-87 (Ginsberg, J.,

dissenting) (so finding and arguing that the Court should affirmatively permit § 107(a) PRP cost

recovery actions rather than remanding and further "protracting this litigation"); *Vine St.*, 362 F.

Supp. 2d at 763 ("Quite simply a potentially responsible party that voluntarily works with a

government agency to remedy environmentally contaminated property should not have to wait to

be sued to recover cleanup costs since Section 113(f)(1) is not meant to be the only way to

recover cleanup costs.").

Moreover, precluding a PRP that has voluntarily undertaken a cleanup from recovering its

costs from other PRPs would contravene the statutory purposes of CERCLA.  (*See* Pl.'s Opp'n at

26-27.)   The "two . . . main purposes of CERCLA" are "prompt cleanup of hazardous waste sites

and imposition of all cleanup costs on the responsible part[ies]."  *Meghrig v. KFC W., Inc.*, 516

U.S. 479, 483 (1996) (quoting *Gen. Elec. Co. v. Litton Indus. Automation Sys., Inc.*, 920 F.2d

1415, 1422 (8th Cir. 1990)) (internal quotation marks omitted); *see also* H.R. Rep. No. 99-253,

pt. III, at 15 (1985).  Without the ability to recover costs under § 107(a), these goals would be

frustrated because PRPs would be dissuaded from voluntarily taking prompt action if so doing, as

opposed to awaiting suit or an administrative order compelling such action, significantly harmed

the PRP's ability to recover some share of its costs from other responsible parties.  In other

words, a party that acts "involuntarily" -- whether (1) as a result of a settlement, (2) pursuant to

an EPA order under § 106, or (3) following a lawsuit brought by EPA, a state, or a private party

under § 107 -- is assured of the opportunity to seek contribution via § 113(f).  But in the case of voluntarily-initiated action, none of those three triggers would likely apply, thereby precluding a § 113(f) contribution action.  If § 107(a) relief were not available as a backstop in such situations, this anomalous result would serve as a powerful deterrent to undertaking prompt, voluntary response actions, and would instead motivate a PRP to follow the arduous litigation path that all too often is the norm for involuntary cleanups.  By contrast, this Court's plain language reading of CERCLA -- allowing § 107(a) cost recovery actions to proceed where a § 113(f) action is impossible -- gives effect to CERCLA's purpose by encouraging expeditious, voluntary environmental cleanups while holding PRPs, including those not undertaking voluntary action, accountable for the response costs their past activities induced.  *Accord Metro. Water*, 365 F. Supp. 2d at 918 ("[a]ny other outcome would seem to lie contrary to the general purposes of CERCLA to promote prompt and proper cleanup of contaminated properties").

The propriety of this result is illustrated by the facts of this case.  Here, the PRP from which partial recovery of costs is sought is also the party most able to trigger any of the three § 113(f) scenarios whereby Viacom could seek contribution pursuant to that section.  It would be manifestly unjust if the United States could insulate itself from PRP liability by simply deciding not to invoke its powers to settle with, sue, or issue an administrative order requiring plaintiff to act.  *See Vine St.*, 362 F. Supp. 2d at 763 ("a potentially responsible party. . . should not have to wait to be sued to recover cleanup costs since § 113(f)(1) is not meant to be the only way to recover cleanup costs").  The Court's construction of CERCLA avoids this obvious injustice.

Finally, this result accords with the legislative history of § 113(f), which evidences a Congressional intent to allow contribution claims under the preexisting § 107(a) in addition to

those under the new section.  (*See* Pl.'s Opp'n at 17-18.)  Congress intended to "clarify" and "confirm," rather than curtail, the right of contribution that federal courts had previously found implied in the statute.  *See* H.R. Rep. No. 99-253, pt. 1, at 59 (1985); S. Rep. No. 99-11, at 44 (1985); 131 Cong. Rec. S1155 (daily ed. Sept 20, 1985) (statement of Sen. Stafford) (predicting that § 113 would "remove any doubt as to the right of contribution"); s*ee also Pinal Creek Group v. Newmont Mining Corp.*, 118 F.3d 1298, 1301 (9th Cir. 1997) ("The legislative history behind § 113(f) also supports the conclusion that, in enacting that provision, Congress was only confirming and clarifying an existing claim for contribution under § 107.")


## <u>CONCLUSION</u>

Plaintiff, which cannot seek contribution pursuant to § 113(f), may instead seek to recover cleanup costs from defendant via § 107(a).  Accordingly, the Court denies defendant's Motion to Dismiss.


s/<br>
ELLEN SEGAL HUVELLE<br>
United States District Judge

Dated:  July 19, 2005